**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

February 1, 2013

LETTER TO COUNSEL:

      RE:   *Monique Angela Pierre v. Commissioner, Social Security Administration*;
              Civil No. SAG-11-525

Dear Counsel:

      On February 28, 2011, the Plaintiff, Monique Angela Pierre, petitioned this Court to review the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 14, 15). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

      Ms. Pierre filed her Title II application on December 3, 2007, and her Title XVI application on December 18, 2007, alleging disability beginning on April 13, 2007.[1] (Tr. 19). Her claim was denied initially on April 22, 2008, and on reconsideration on October 29, 2008. (Tr. 92-95). A hearing was held on September 15, 2009 before an Administrative Law Judge ("ALJ"). (Tr. 45-87). Following the hearing, on October 8, 2009, the ALJ determined that Ms. Pierre was not disabled during the relevant time frame. (Tr. 14-44). The Appeals Council denied Ms. Pierre's request for review, (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the agency.

      The ALJ found that Ms. Pierre suffered from the severe impairments of depression, attention deficit hyperactivity disorder, bipolar disorder, obsessive compulsive disorder, posttraumatic stress disorder, cervical spondylosis, lumbar degenerative disc disease, and obesity. (Tr. 20). Despite these impairments, the ALJ determined that Ms. Pierre retained the residual functional capacity ("RFC") to:

> perform simple, unskilled light work as defined in 29 CFR 404.1567(b) and 416.967(b) except that she can lift 20 pounds occasionally, 10 pounds frequently, stand or walk for 6 hours in an 8 hour day, sit for 6 hours in an 8 hour day, avoiding overhead work, occasionally climbing a ramp or stairs, balancing,

---

[1] Ms. Pierre amended her original onset date of February 1, 2005. (Tr. 17).

stooping, kneeling, crouching, crawling and stooping but never climbing a ladder, rope or scaffold and involving essentially isolated work with only occasional supervision.

(Tr. 34). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Pierre could perform jobs that exist in significant numbers in the national economy, and that she was therefore not disabled during the relevant time frame. (Tr. 43-44).

Ms. Pierre presents three arguments on appeal: (1) that the ALJ's step two findings were improper; (2) that the ALJ's mental RFC findings precluded unskilled work; and (3) that the ALJ's reliance on the VE's testimony was improper pursuant to Social Security Ruling 00-4p. Each argument lacks merit.

Ms. Pierre submits that the ALJ should have found her anxiety disorder, her carpal tunnel syndrome, and her migraine headaches to be severe impairments at step two. An impairment is considered "severe" if it significantly limits the claimant's ability to work. *See* 20 C.F.R. § 404.1521(a). The claimant bears the burden of proving that an impairment is severe. *Johnson v. Astrue*, Civil Action No. PWG-10-3139, 2012 WL 203397, at *2 (D. Md. Jan. 23, 2012) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). In this case, the ALJ found Ms. Pierre to have five severe mental impairments, some of which can be categorized as "anxiety disorders." Ms. Pierre has not established an "anxiety disorder" causing limitations distinct from those caused by her other mental impairments. Moreover, the ALJ fully considered all of Ms. Pierre's mental limitations, not only at step two, but also at all the remaining steps. (Tr. 20). For example, at step three, the ALJ considered Listing 12.06, which governs "*Anxiety Related Disorders.*" (Tr. 32).

With respect to Ms. Pierre's carpal tunnel syndrome and her migraines, the ALJ made specific step two findings supporting the determination that the impairments were not severe. (Tr. 29-32). The ALJ noted that Ms. Pierre's carpal tunnel syndrome was significantly improved in terms of pain and paresthesias after she underwent a right carpal tunnel release on March 17, 2005. (Tr. 31). On April 7, 2005, Ms. Pierre underwent surgery for her left carpal tunnel. (Tr. 31). Dr. Christian Jensen performed a consultative examination on March 31, 2008, and reported that Ms. Pierre's grip strength was 3 out of 5 and equal bilaterally. Dr. Jensen did not find any significant limitations in her grip strength bilaterally. (Tr. 31, 618). Likewise, Dr. Patrick Callahan examined Ms. Pierre on May 25, 2008, and reported that she had a normal upper extremity range of motion and good handgrip bilaterally. (Tr. 32, 709). As to migraines, the ALJ found that Ms. Pierre's headaches were well controlled with her prescribed medication. (Tr. 29-30). Ms. Pierre's treating physician reported that Ms. Pierre's migraines were stable and that medication helped her headaches. (Tr. 482, 484, 486, 598, 604). Substantial evidence therefore supported the ALJ's step two analysis. Moreover, even if I were to agree that the ALJ erred in her evaluation of any of Ms. Pierre's impairments at step two, such error would be harmless. Because Ms. Pierre made the threshold showing that she suffered from other severe impairments, the ALJ continued with the sequential evaluation process and properly considered all of the

*Monique Angela Pierre v. Commissioner, Social Security Administration*
Civil No. SAG-11-525
February 1, 2013
Page 3

impairments, both severe and nonsevere, that significantly impacted Ms. Pierre's ability to work. *See* 20 C.F.R. §§ 404.1523, 416.923.

Likewise, I am not persuaded by Ms. Pierre's second argument that because she had been assessed with a Global Assessment of Functioning ("GAF") of 30, the ALJ's determination that she had the mental capacity to perform unskilled work was erroneous.  Throughout the opinion, the ALJ provided a thorough analysis of the work-related mental functions, in accordance with 20 C.F.R. §§ 404.1520a, 416.920a. (Tr. 20-25, 32-35).  The ALJ discussed Ms. Pierre's alleged problems with memory, concentration, and inability to focus, and also discussed the findings of the state agency reviewing physicians.  *Id.*  The ALJ discussed the amount of weight assigned to each portion of the physicians' opinions.  *Id.*  The fact that the ALJ afforded little weight to certain medical evidence does not invalidate the conclusions reached, so long as the conclusions were based on substantial evidence. Specifically, the ALJ acknowledged that Ms. Pierre had been assessed with GAF scores in the 30s.  (Tr. 22, 24, 38).  However, after participating in treatment, Ms. Pierre showed improvement and was assessed with GAF scores of 50 in January 2008, March 2008, and March 2009. (Tr. 658, 759, 794).  The ALJ specifically noted that a GAF score is "not entitled to great weight in making disability determinations" because it is a "subjective not an objective measure."  (Tr. 38).

The ALJ included RFC limitations to address each of Ms. Pierre's substantiated mental impairments.  For example, the ALJ included the limitation of simple, unskilled work "to consider the claimant's memory impairment, depression, and subjective complaints of fatigue," (Tr. 39), and included the limitation of "essentially isolated work with only occasional supervision," to address social impairment. (Tr. 34).  In this case, the ALJ's extensive analysis of all the evidence regarding Ms. Pierre's mental impairments provides ample substantial evidence to sustain the conclusion.

Ms. Pierre's final argument is that the ALJ's reliance on the VE's testimony was improper due to an unresolved conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT").  Ms. Pierre cites to the DOT for the proposition that the positions of "credit card clerk" and "telephone survey taker" each require a reasoning level of three.  Pl. Mot. 10-12.  She argues that this reasoning level exceeds her limitation to "simple, unskilled" work.  As defined in the DOT, reasoning level 3 requires a worker to:

> Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

DOT Appendix C, Components of the Definition Trailer www.oalj.dol.gov.  There is no evidence that Ms. Pierre was unable to perform such work.  In fact, her treating physician, Dr. W. Craig Wessells, noted that Ms. Pierre had "no articulation problems and appears fairly organized with her thoughts."  (Tr. 658). Dr. Bruce Hutchinson performed a psychiatric consultative examination of Ms. Pierre and noted that she had been an honor roll student in school, her intellectual functioning was generally within normal limits, and that her insight and

judgment were considered good. (Tr. 673-74). This evidence seriously undermines Ms. Pierre's argument that her limitation to "simple, unskilled" work prohibits her from performing the jobs identified by the VE.

Ms. Pierre also argues that the jobs of "library clerk" and "photocopy machine operator" exceed her limitations regarding stooping, kneeling, overhead reaching, and social interaction. Pl. Mot. 12-13. Her argument is without merit. There is no apparent conflict between the VE's testimony and the DOT descriptions. The VE testified that the jobs cited were consistent with those in the DOT or companion publications. (Tr. 83). Ms. Pierre has not established the existence of an apparent conflict between the VE's testimony and the DOT. Moreover, because the VE identified four jobs in response to the hypothetical, (Tr. 82), even if a conflict existed as to one or two of the four jobs, reliance on the VE's testimony would still be supported by substantial evidence.

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 14) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 15) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge